Daniel M. Rosenfelt
Arizona Bar No. 014883
**ROSENFELT & BUFFINGTON, P.A.**
1805 Carlisle NE
Albuquerque, NM  87110
[drosenfelt@rbblaw.com](mailto:drosenfelt@rbblaw.com)
Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Bobby Yazzie, as Court Appointed Permanent Guardian of Cindy Begay,<br><br>  Plaintiff,<br><br>vs.<br><br>The United States of America; William Killam, M.D.; and JCNationwide,<br><br>  Defendants. | NO.  CIV 04-01350-PCT-SMM<br><br>**MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT**<br><br>(Assigned to the Honorable<br>   Stephen M. McNamee) |

Defendant William Killam, M.D. ("Killam") claims that he is entitled to summary judgment based on the assertion that the suit filed against him was untimely under the Arizona statute of limitations, as codified in A.R.S. § 12-542(1).  However, A.R.S. § 12-502 provides, in relevant part, that:

> A.  If a person entitled to bring an action other than those set forth in Article 2 of this chapter is at the time the cause of action accrues either under eighteen years of age *or of unsound mind,* the period of such disability shall not be deemed a portion of the period limited for commencement of the action.  Such person shall have the same time after removal of the disability which is allowed to others. (Emphasis added.)

Because of Plaintiff Cindy Begay's "unsound mind," the statute of limitations was tolled, and the suit against this Defendant was timely filed.

In the alternative, Defendant Killam was either an employee or ostensible agent of Defendant United States at the time of his employment with Chinle Comprehensive Health Care Facility, where he provided treatment to Plaintiff Cindy Begay. Because suit was timely filed against Defendant United States under the Federal Tort Claims Act, the claims regarding Defendant Killam's malpractice were timely filed under federal law.

**I.      Facts**

Plaintiff admits the facts as stated in Defendant's Statement of Facts. In particular, Plaintiff notes that Defendant Killam has attached to his Statement of Facts a copy of the Emergency Guardianship and Civil Commitment Order, as well as a copy of the Consent to Appointment of Guardian and Order Appointing Guardian of Adult. Exhibits 3 and 6 to Defendant's Statement of Facts. The Consent to Appointment of Guardian states that Cynthia Begay is institutionalized due to severe brain damage.

As more fully set out in Plaintiff's statement of facts, Plaintiff's expert, Daniel B. Overbeck, Ph.D., is a licensed psychologist specializing in developmental psychology. After reviewing the medical records and meeting with Plaintiff Cindy Begay, it is his professional opinion that Plaintiff is and has been incompetent to make important decisions in her life regarding her care and treatment since at least April, 2001, and that she remains unaware of what caused her condition or even that she is mentally incapacitated. His opinion is based on such observations and determinations as Cindy Begay's difficulty following even the simplest directions and/or instructions, fragmented memory, inability to recognize simple words or perform simple arithmetic.

Cindy Begay remains unable to manage her household responsibilities in an independent fashion, such as cleaning, vacuuming, sweeping, budgeting, grocery shopping, meal preparation, laundry, etc., and she is totally dependent on the staff at the care facility for basic domestic and community functions.  She is unable to use public transportation on her own, which is compounded by her inability to safely interact with strangers while seeking assistance.  Cindy Begay cannot self-report health concerns, understand the risks and benefits of proposed treatments, dosage requirements and schedules, or participate in her own health decisions.  She does not understand the ramifications surrounding the adoption of her daughter or even appreciate that she delivered a baby.

Additionally, Defendant United States holds itself out as the "health care hub for the region" at the Chinle Comprehensive Health Care Facility, where Plaintiff Cindy Begay was treated.  In fact, Defendant United States asserts it is the "principal Federal health care provider and health advocate for Indian people" through the Indian Health Service and "provides a comprehensive health services delivery system" for Native Americans.  The very name of the facility, the "Chinle Comprehensive Health Care Facility," gives the impression that a full range of health care is provided to the Navajo people by Defendant United States, as required by the Treaty of 1868, The Snyder Act, and subsequent legislation.

When Plaintiff Cindy Begay went to the Chinle Comprehensive Health Care Facility for prenatal care and the delivery of her child, the impression given by Defendant United States noted above was continued in the care provided to her.  According to Marilyn Begay, who accompanied Plaintiff, the hospital made no effort to advise Plaintiff or Marilyn Begay that Defendant Killam was an independent contractor; he wore a hospital coat with a hospital nametag, and no forms were provided that stated he was an independent contractor.

Plaintiff Cindy Begay, her friends and family relied on the reasonable assumption that Defendant Killam was an employee of the Chinle Comprehensive Health Care Facility. As stated by Marilyn Begay, had they known his alleged status as an independent contractor, so that the government would claim it was not responsible for his actions or make sure that he had enough insurance to cover him for any mistakes he might make, they would have asked for a government doctor.

## II. Argument

Statute of limitations was tolled by Plaintiff's "unsound mind."

Defendant William Killam, M.D.'s Motion for Summary Judgment is based on the assertion that suit was not timely filed against this Defendant pursuant to Arizona law, specifically Arizona's statute of limitations, as found at A.R.S. § 12-542(1). Defendant Killam correctly states that, as to this specific defendant, the applicable statute of limitations is that of Arizona, rather than federal law. While the claims against the United States are subject to the limitations provisions of the Federal Tort Claims Act, federal courts look to state law for limitations provisions and corresponding tolling provisions relating to state law claims. *See*, *Two Rivers v. Lewis*, 174 F.3d 987 (9th Cir. 1999) (where federal court applies state statute of limitations, it also borrows the forum state's tolling provisions applicable to such suits). However, Defendant Killam is incorrect in his statement that the statute of limitations was not tolled in this case. Under A.R.S. § 12-502, the statute of limitations for Defendant's medical malpractice was tolled due to Plaintiff's "unsound mind."

Arizona courts recognize that an action for personal injury is a fundamental right guaranteed by the Arizona Constitution. *Kenyon v. Hammer*, 142 Ariz. 69, 688 P.2d 961 (1984). While the statute of limitations to bring a claim for medical malpractice in Arizona is two years,

*see* A.R.S. § 12-542(1), the period is tolled when a plaintiff is a minor or of unsound mind.  *See* A.R.S. § 12-502.  For the purposes of the tolling statute, Arizona courts have held that a person of "unsound mind" is one who is unable to manage her affairs or to understand her legal rights or liabilities.  *See Allen v. Powell's International, Inc.*, 21 Ariz.App. 269, 518 P.2d 588 (1974).  The tolling of the statute of limitations is based on equitable principals similar to those underlying the discovery rule: it is unfair to bar an action in which the plaintiff is mentally disabled and thus unable to appreciate or pursue her legal rights.  *See, e.g. Vega v. Morris*, 184 Ariz. 461, 463-64, 910 P.2d 6, 8-9 (1996); *Doe v. Roe*, 191 Ariz. 313, 325-6, 955 P.2d 951, 963-4 (1998).  In this case, it would be particularly unfair to bar such an action, because Plaintiff's disability was caused by Defendant's actions.

The tolling statute applies "whenever there is a period limited for commencement of an action" for or on behalf of a person of "unsound mind," including actions for negligence.  *See Dugan v. Fujitsu Business Communications Systems, Inc.*, 188 Ariz. 516, 937 P.2d 706 (App. Div. 1 1997), *amended on reconsideration; Sahf v. Lake Havasu City Association for the Retarded and Handicapped*, 150 Ariz. 50, 721 P.2d 1177 (App. Div. 1 1986).

The standard for determining Cindy Begay is of "unsound mind" is based on two inquiries: (1) the inability to manage her daily affairs, and (2) the inability to understand her legal rights and liabilities.  The resulting inability to bring the action is the basis for tolling the statute of limitations.  *See Doe v. Roe*, 191 Ariz. at 325-6, 955 P.2d at 951; *Florez v. Sargeant*, 185 Ariz. 521, 526, 917 P.2d 250, 255 (1996).

In the present case, Plaintiff is unable to perform simple addition and subtraction, making managing money almost impossible.  She cannot use public transportation on her own or safely interact with strangers to seek assistance.  Cindy Begay cannot follow simple instructions, and

she is unable to state her birth year or current age. She cannot manage her household responsibilities in an independent fashion, such as cleaning, vacuuming, sweeping, budgeting, grocery shopping, meal preparation, laundry, etc., and she is totally dependent on the staff at the care facility for basic domestic and community functions. Even more telling, it is her doctors' opinion that she does not understand the ramifications surrounding the adoption of her daughter or even appreciate that she delivered a baby. Cindy Begay is dependent on her caregivers to provide her day-to-day care, and she remains unaware of what caused her condition or even that she is mentally incapacitated. As Defendant noted in his Statement of Facts, a guardian for Plaintiff was appointed in an Emergency Guardianship and Civil Commitment Order. *See* Exhibit 3 to Defendant's Statement of Facts. Based on these facts and those presented by both Plaintiff and Defendant, Plaintiff Cindy Begay qualifies as being of "unsound mind," tolling the statute of limitations.

The appointment of a guardian does not end the tolling of the statute of limitations.

Defendant Killam also asserts that, because Plaintiff Cindy Begay has a court-appointed guardian, the tolling of the statute of limitations ended at the time of the appointment. Defendant cites to numerous instances where the guardians admitted knowing that a problem existed. However, the question is not simply one of discovery of the malpractice, but whether or not the appointment of a guardian for Cindy Begay ends the tolling of the statute of limitations. It does not.

Arizona courts have specifically held that the appointment of a guardian does not end the tolling of the statute for the disabled party. For example, the court in *Barrio v. San Manuel Division Hospital for Magma Copper Co.*, 143 Ariz. 101, 692 P.2d 280 (1984) held that the personal injury of a minor was tolled by the statute regardless of whether the minor has a parent

or guardian who could have brought suit on his behalf. The court in *Barrio* made it clear that the controlling consideration under Arizona law is the inability of the injured individual to bring an action on her own behalf, not the possibility that a guardian or parent will assert her rights. This is in accord with Arizona's expressed policy of protecting the disabled from statutes of limitation. *See, e.g., Brooks v. Southern Pacific Co.*, 105 Ariz. 442, 466 P.2d 736 (1970).[1] While a guardian's individual claims are not tolled, the courts continue to hold that the statute of limitations is tolled for the claims of a person of "unsound mind." *See Sahf*, 150 Ariz. at 56, 721 P.2d at 1183. The claims brought in this cause of action are those of Cindy Begay for the Defendant's medical negligence, which caused her to be disabled. The presence of a guardian does not change the status of the statute of limitations with regard to Cindy's claims.

Defendant Killam was an employee of Defendant United States of America under the FTCA.

The Federal Tort Claims Act ("FTCA") is a limited waiver of sovereign immunity that only applies to federal employees, which under the Act are defined to include officers and employees of any federal agency, but exclude contractors. *See United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971 (1976); 28 U.S.C. § 2671. Although a critical element in determining whether an individual is an employee or contractor is the power of the government to control the detailed physical performance of the contractor, when it comes to physicians, the "day-to-day control" test is more difficult to apply. As noted in *Woodruff v. Covington*, 389 F.3d 1117, 1127 (10th Cir. 2004), a court takes into account the doctor's "medical and ethical obligations of independent judgment" when it applies the traditional control test. In the case of professionals, such as doctors, a court determines whether other evidence "manifests an intent to make the professional an employee subject to other forms of control which are permissible." *Id.*

---

[1] Although at first glance this may seem an odd result, in balancing equities between the rights of a disabled person, even one with a guardian, and the rights of a party who caused injury, Arizona courts have consistently sided with

A few cases are helpful in illustrating Defendant Killam's status as an actual employee, rather than independent contractor, of Defendant United States. Unlike the doctor in *Lilly v. Fieldstone,* 876 F.2d 857, 859 (10th Cir. 1989), Defendant Killam was employed by Defendant United States through Defendant JC Nationwide. According to Defendant Killam's contract with Defendant JC Nationwide, Defendant Killam was not permitted to provide professional services in competition with JC Nationwide. He was also not permitted to profit on other goods and services while under contract with JC Nationwide or receive any direct patient fees. In essence, he was not allowed to have a medical office or practice outside of Chinle Comprehensive Health Care Facility. Nor was he allowed to maintain separate copies of patients' medical records. Defendant Killam was also required to work a regular schedule at the hospital.

*Bernie v. U.S.*, 712 F.2d 1271 (8th Cir. 1983), unlike the present case, involved physicians whose malpractice did not occur at the IHS hospital, but rather at another hospital that contracted with IHS to provide service to Indian patients. Here, Defendant Killam's malpractice occurred while he was working at Chinle Comprehensive Health Care Facility.

The FTCA defines a government employee as including "officers or employees of any federal agency … and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States." 28 U.S.C.A. § 2671. The Court in *Woodruff* cited seven factors to help guide the determination of whether or not day-to-day operations are supervised by the Federal Government: 1) the intent of the parties; 2) whether the United States controls only the end result or may also control the manner and method of reaching the result; 3) whether the person uses his own equipment or that of the United States; 4) who provides liability insurance; 5) who pays social security tax; 6) whether federal regulations

---

disabled parties.

prohibit federal employees from performing such contracts; and 7) whether the individual has authority to subcontract to others. *Woodruff*, 389 F.3d at 1126. *See also Lilly v. Fieldstone*, 876 F.2d 857, 859 (10th Cir. 1989); *Curry v. United States*, 97 F.3d 412, 414 (10th Cir. 1996). In the present case, Defendant Killam did not maintain a separate office; he was forbidden to do so. Defendant Killam used hospital equipment as needed; he worked regular hours at Chinle Comprehensive Health Care Facility; and federal regulations do not prohibit federal employees from working as obstetricians at IHS hospitals. Although Defendant JC Nationwide was supposed to provide Defendant Killam's malpractice insurance, his day-to-day employment was more characteristic of an employee of Chinle Comprehensive Health Care Facility, rather than an independent contractor.

When there is a contract between the government and the physician, clear language regarding government control or "federal employee" status can prevail over facts that might otherwise support a finding of "day-to-day control." *See Duplan v. Harper*, 188 F.3d 1195, 1200-02 (10th Cir. 1999). However, here there is no written contract between Defendant Killam and Defendant United States. The only written contracts are those between Defendants Killam and JC Nationwide, and between Defendants United States and JC Nationwide in the form of an Order for Supplies or Services. In fact, the contract between the United States and JC Nationwide is conspicuously silent as to whether or not the doctor provided by Defendant JC Nationwide is an employee or independent contractor. The only contract that specifically mentions this status is the contract between Defendants Killam and JC Nationwide, which states that Defendant Killam is an independent contractor in relation to Defendant JC Nationwide. Within the confines of Chinle Comprehensive Health Care Facility, Defendant Killam's status was more akin to that of the nurse in *Bird v. United States*, 949 F.2d 1079, 1086 (10th Cir. 1991).

Defendant Killam saw patients assigned to him by the hospital at the facility, not in any private office. Defendant Killam wore a coat and nametag provided to him by the hospital, which had no indication that he was an independent contractor. Defendant Killam used hospital equipment and worked the hours designated in the Order for Supplies or Services. Given the totality of the circumstances, Defendant Killam was an employee, not an independent contractor, of Defendant United States. Because there is no question that the original complaint against Defendant United States was timely filed, it is a moot point when Defendant Killam was named in the amended complaint, as Defendant United States is responsible for him under the Federal Tort Claim Act.

<u>Defendant Killam is an actual or ostensible agent of Defendant United States of America.</u>

In the alternative, because Defendant Killam was an actual or ostensible agent of Defendant United States of America, the amended complaint adding Dr. Killam as a defendant relates back to the original filing, which was timely filed under the FTCA.

It is undisputed that plaintiff's tort claim notice was appropriately and timely presented. Further, there is no issue concerning timeliness of the original complaint against the United States and its employees. Since the United States did not formally deny plaintiff's claim within six months after receiving the administrative claim, plaintiff could properly "deem it denied and file suit in district court at any time prior to final agency action or the claimant may await final agency action and file suit within six months thereafter." *Lehman v. United States*, 154 F.3d 1010, 1013 (9th Cir. 1998), *quoting Anderson v. United States*, 803 F.2d 1520, 1522 (9th Cir. 1986).

Under the FTCA, federal employees are not sued individually. It was not until counsel for Plaintiff received an e-mail from counsel for Defendant United States on December 10, 2004, that Defendant Killam's status as an independent contractor, rather than a federal employee, was

10

confirmed. On January 18, 2005, just over a month later, Plaintiff was able to file an unopposed motion to amend the complaint, adding Dr. Killam as a Defendant. The original complaint included in the list of defendants John and Jane Does, 1-5. Defendant Killam's status as an ostensible agent is important because if he is held to be an agent, the FTCA applies, and the appropriate statute of limitations is federal, rather than state law. Additionally, as Dr. Killam is an agent, Defendant United States is responsible for Defendant Killam's negligence under *respondeat superior.*

Most reported cases involving doctors and the FTCA are similar to *Linkous v. U.S.*, 142 F.3d 271 (5th Cir. 1998), which held that an OB/GYN at an army hospital was not an employee but an independent contractor. That does not end the inquiry, however.

In *Gamble v. United States*, 648 F.Supp. 438 (N.D. Ohio (1986)), the government was equitably estopped from asserting that the doctor was not a government employee of the VA hospital. The doctor in question, while technically under contract to the VA, held himself out as Chief of Anesthesia with the VA's consent and maintained an office at the hospital. The VA held itself out to patients as a full-service hospital and created the appearance, relied on by patients, that VA agents, not independent contractors, would provide medical care. The court therefore held that the government could not contractually insulate itself from liability under those facts.

In the present case, Plaintiff went to The Chinle Comprehensive Health Care Facility in Chinle, Arizona for the first time during her pregnancy less than two months before the delivery of her baby. The hospital is owned and operated by the United States, under the Department of Health & Human Services. Plaintiff Cindy Begay had four more prenatal visits prior to being admitted for the delivery. As indicated even by the name of the hospital, Chinle Comprehensive

Health Care Facility held itself out to patients and the general public as a full-service hospital and created the appearance, relied on by patients, that hospital agents, not independent contractors, would provide medical care.

Under the Federal Tort Claims Act, state agency law cannot be utilized in the initial determination of whether an individual works for the US government. However, once it is established that the individual works for the government in some capacity, the court will then go to state agency law to characterize the nature of the employment relationship. *See Ward v. Gordon*, 999 F.2d 1399 (9th Cir. 1993). In the present case, even if Defendant Killam was an independent contractor, Arizona agency law will apply to determine if he was an actual or ostensible agent of Defendant United States.

Arizona follows the definition of apparent authority found in the Restatement (Second) of Agency § 27 (1958), which states that:

> apparent authority to do an act is created as to a third person by written or spoken words or an other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

In *Beeck v. Tucson General Hospital*, 500 P.2d 1153 (Ariz. App. 1972), *reh. denied*, the patient was not given a choice of what doctor to see—the hospital made the choice, essentially. The court held that the radiologist was an actual agent, making hospital liable for the radiologist's malpractice, even though he was an independent contractor. This case involves similar circumstances, where Plaintiff Cindy Begay did not choose her physician, but instead was assigned to Defendant Killam by Chinle Comprehensive Health Care Facility.

In another case, *Gregg v. Nat. Medical Health Care Services*, 699 P.2d 925 (Ariz. App. 1985), the court held that a hospital can't be held liable for the negligence of the doctor unless it had the right to control the conduct of the physician, ***except under a theory of ostensible agency***.

As an apparent agent of the hospital, Defendant United States could be held liable for Defendant Killam's negligence, regardless of his actual employment status, making federal law apply rather than state law.

A recent case, *Henry v. Flagstaff Medical Center, Inc.*, __ P.3d __, 2006 WL 1015451, Ariz.App.Div. 1, Apr. 20, 2006, held that an "on-call" physician called in to consult in an obstetrics case was not an apparent agent, but the case is more similar to *Gregg* noted above than the present matter. In both *Henry* and *Gregg*, the physician in question was called in to consult. Both cases also, unlike the present suit, involved large hospitals in metropolitan areas, where the patient could, if he or she so chose, seek medical care elsewhere. Here, Plaintiff Cindy Begay went to the only hospital in the immediate area, owned and operated by Defendant United States to provide medical care for the residents of the Navajo Nation where it was located.

Marilyn Begay, who accompanied Cindy Begay on every prenatal visit and went to the hospital for the delivery, stated in her affidavit that no one told them that Defendant Killam was supposed to be an independent contractor; in fact, they reasonably relied on the appearance of his employee status with the hospital. Marilyn Begay stated that had they known Defendant Killam was an independent contractor, they would have asked not only if they had to pay him, but who would be responsible for his mistakes. Had Marilyn Begay and Plaintiff Cindy Begay been told that the government would not be responsible for him or ensure he had enough insurance to take care of any mistakes he might make, they would have asked for a government doctor.

Plaintiff Cindy Begay's medical records do not, unlike *Henry*, contain an admission or consent form that states, even inadequately, that Dr. Killam was an independent contractor. Citing to *Burless v. W. Va. Univ. Hosps., Inc.*, 601 S.E.2d 85, 97 (W. Va. 2004), the court in

13

*Henry* noted that the consent form signed by the Plaintiff also gave inadequate notice of the particular physician's relationship with the hospital, agreeing that "[i]t would be absurd to require … a patient … to inquire of each person who treated him whether he is an employee of the hospital or an independent contractor." *Henry,* slip op. at 13. A reasonable person in Plaintiff Cindy Begay's situation could easily have concluded that Defendant Killam was either a government employee or agent.

Additionally, Defendant United States actively represents itself as the "principal Federal health care provider and health advocate for Indian people," stating that the Indian Health Service, which operates the Chinle Comprehensive Health Care Facility "provides a comprehensive health services delivery system" for Native Americans. Defendant United States asserts that its "medical staff", which includes OB/GYNs, provides "routine outpatient and inpatient primary care" at the Chinle Comprehensive Health Care Facility, the "health care hub for the region."

Arizona requires that a patient in Plaintiff Cindy Begay's position have relied on the principal's conduct to establish an apparent agency relationship. The medical records attached by Defendant Killam to his statement of facts show that Plaintiff had medical problems even before the delivery of her baby, including a diagnosis of Coffin-Siris like syndrome. Plaintiff's medical history made complications more likely, and she relied on the apparent relationship between Chinle Comprehensive Health Care Facility and Defendant Killam when choosing to go to the hospital where, presumably, better medical care should have been available in case complications did arise. Plaintiff reasonably assumed that the hospital hired not only competent physicians, rather than farming the work out to a staffing agency, but physicians who were familiar with the Navajo culture and its affect on medical decisions. Defendant United States, as

shown above, not only holds itself out as a full-service provider, it did nothing in this case to correct the impression given to Plaintiff Cindy Begay and Marilyn Begay that Defendant Killam was its employee. If Defendant Killam is an agent of Defendant United States, actual or apparent, then Defendant United States is liable for Defendant Killam's negligence.

Conclusion

Applying Arizona statutes and case law, the statute of limitations with regard to Defendant Killam was tolled by Plaintiff Cindy Begay's "unsound mind." The appointment of a guardian for Plaintiff did not end the tolling for Ms. Begay's claims, and the amended complaint asserting claims against Defendant Killam was therefore timely filed.

In the alternative, because Defendant Killam was either an employee or an ostensible agent of Defendant United States, the federal statute of limitations under the FTCA applies, and Defendant United States is liable for his negligence.

Finally, Defendant asserts that the claims of the minor, Micah Begay, were also not timely filed. Although the minor child has his own counsel and will timely file a response, Plaintiff would note that, as a minor, A.R.S. § 12-502 tolls his claims as well.

**WHEREFORE**, plaintiff respectfully prays this Court deny Defendant Killam's motion for summary judgment, and for such other relief as the Court deems proper under the law.

Respectfully submitted,

**ROSENFELT & BUFFINGTON, P.A.**

By: s/Daniel M. Rosenfelt
    Daniel M. Rosenfelt
    1805 Carlisle NE
    Albuquerque, New Mexico  87110
    (505) 266-3441
    Counsel for Plaintiff Cindy Begay

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 10, 2006, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF Registrants:

    Michael A. Johns
    Assistant United States Attorney
    United States Attorney's Office
    Two Renaissance Square
    40 North Central Avenue, Suite 1200
    Phoenix, Arizona 85004-4408
    Email: mike.johns@doj.gov

    Dennis J. Glanzer
    Glanzer Law Office
    110 North Agassiz Street
    Flagstaff, Arizona 86001
    Email: djglanzer@yahoo.com

    Scott Alan Holden
    Holden & Armer, P.C.
    5333 N. Seventh Street, Suite A-200
    Phoenix, Arizona 85014-2804
    Email: sholden@holdenarmer.com

      I further certify that on May 10, 2006, I served the attached document by First Class Mail, on the following, who are not registered participants of the ECF System:

    Carolyn Armer Holden
    Holden & Armer PC
    5333 N Seventh St, Suite A-200
    Phoenix, AZ 85014-2804

<u>s/Daniel M. Rosenfelt</u>

Daniel M. Rosenfelt
ROSENFELT & BUFFINGTON, P.A.
Counsel for Plaintiff