**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bobby Yazzie, as Court Appointed Guardian of Cindy Begay,<br><br>   Plaintiff,<br><br>and<br><br>Marilyn Begay and Edison Begay, Sr., Individually and as Court Appointed Guardians of Micah Uriah Begay,<br><br>   Intervenors<br><br>vs.<br><br>The United States of America; William Killam, M.D.; and JC Nationwide,<br><br>   Defendants. | No. CV 04-1350-PCT-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

The present case is a medical malpractice action brought pursuant to the Federal Tort Claims Act (the "FTCA"). Plaintiff Bobby Yazzie ("Yazzie"), as the Court-appointed guardian of Cindy Begay ("Cindy"), and Intervenors Marilyn and Edison Begay (the "Begays"), as Court-appointed guardians of Micah Uriah Begay ("Micah"), allege that Defendants provided negligent medical care to Cindy between March 15 and March 17, 2001, when she went into labor and delivered Micah. (Dkt. 13 at ¶¶17-50; Dkt. 30 at ¶¶22-25.) Yazzie has filed a claim of medical malpractice against Defendants on behalf of Cindy. (Dkt. 13.) The Begays seek damages from Defendants on Micah's behalf for loss of consortium with her mother. (Dkts. 30 at ¶¶22-26; 121 at ¶4.)

Pending before the Court is Defendant William Killam, M.D.'s Motion for Summary Judgment against both Yazzie and the Begays. (Dkt. 93.) Dr. Killam contends he is entitled to dismissal as a matter of law because he was not sued within the two-year time frame provided by Arizona's statute of limitations.. Yazzie responds that Arizona's two-year statute of limitations was tolled due to Cindy's "unsound mind," regardless of the availability of a guardian to assert a claim of medical malpractice on her behalf. (Dkt. 110-11.) The Begays similarly respond that, because Micah is still a minor child, the statute of limitations on her claim for loss of consortium has not yet begun to run.[1] (Dkt. 118.) After considering the arguments raised by the parties, the Court now issues the following ruling.

## BACKGROUND[2]

The Chinle Comprehensive Health Care Facility (the "CCHCF") is located within the Navajo Nation and the State of Arizona. (Dkt. 121 at ¶2.) On March 15, 2001, Cindy was admitted to the CCHCF for medical care related to the labor and delivery of her child. On March 17, 2001, Micah was delivered at approximately 8:01 p.m. The medical records reflect that Dr. Killam was present for both the delivery of Micah and the events that occurred afterwards. (Dkt. 94 at ¶¶1-2; Dkt. 121 at ¶2.)

At approximately 9:36 p.m. on March 17, 2001, Cindy experienced "a code arrest," during which her heart stopped beating. (Dkt. 94 at ¶4.) Cindy was successfully resuscitated at approximately 9:45 p.m. (Id.) Plaintiffs allege that, "[i]n the critical minutes following

---

[1] Defendant the United States does not oppose Dr. Killam's Motion for Summary Judgment. (Dkt. 102.)

[2] Neither Yazzie nor the Begays dispute any of the material facts contained in Dr. Killam's Motion for Summary Judgment. See Dkts. 112 at 1; 121. Dr. Killam admits and objects to various facts presented in Yazzie's statement of additional material facts, but contends no additional facts are relevant to the instant Motion for Summary Judgment. Dkt. 115. With the exception of one fact, Dr. Killam does not dispute any of the additional facts set forth in the Begays' statement of additional facts. (Dkt. 127.) The Court agrees that none of the additional facts in Yazzie's statement of additional facts are relevant to the issues presented by Dr. Killam's Motion for Summary Judgment. Thus, unless otherwise stated, the facts are undisputed.

- 2 -

1  her cardiopulmonary arrest, Cindy suffered massive and irreversible brain damage cause by
2  hypoxia (lack of oxygen to her brain)." (Id.; Dkt. 13 at ¶35; Dkt. 30 at ¶22.)  For purposes
3  of the instant Motion only, Dr. Killam does not dispute that Cindy has in fact been of
4  "unsound mind" since March 17, 2001, the date she suffered the code arrest. (Dkt. 114 at
5  4.) All parties agree that any alleged medical malpractice occurred between March 15 and
6  March 17, 2001. (Dkts. 94 at ¶¶1-4; 118 at 2.)

7  Cindy was discharged from CCHCF on April 3, 2001. Due to severe brain damage,
8  she has since lived in a number of different institutions, as well as at home with her mother,
9  Brady Tah ("Tah"). (Dkt. 94, Exs. 3, 6.)

10  On March 1, 2002, Tah was appointed as temporary guardian for Cindy. (Dkt. 94 at
11  ¶5.) On May 6, 2002, Tah authorized the law firm Rosenfelt, Barlow and Borg, P.A. (the
12  "Attorneys") to allege a claim for medical negligence under the FTCA based on Tah's
13  realization that Cindy was seriously injured when she delivered Micah and Tah's suspicion
14  that the injuries resulted from medical malpractice. (Id. at ¶¶6-7; Ex. 4.)

15  When it became clear that Cindy would continue to be unable to care for and raise
16  Micah, the Begays, who are not related to Micah by blood, filed a petition for permanent
17  guardianship with the Family Court of the Navajo Nation. The petition was granted on
18  October 14, 2002. (Dkt. 121 at 3.)

19  The Navajo Nation District Court for the District of Chinle, Arizona appointed Yazzie
20  as Cindy's permanent legal guardian on May 30, 2003. On June 30, 2004, a civil complaint
21  for medical negligence was filed on Cindy's behalf against the United States, Karen Crabtree,
22  M.D., David Kumasaka, M.D., and John and Jane Does 1-5. (Dkt. 1.) Dr. Killam was not
23  listed as a defendant in this initial complaint. (Id.) On January 18, 2005, Yazzie filed a First
24  Amended Complaint alleging that Dr. Killam was liable for medical malpractice. (Dkt. 13
25  at ¶¶ 10-50.)

26  On February 18, 2005, the Begays filed a Motion to Intervene as of Right in this
27  action on Micah's behalf, which this Court granted. (Dkts. 14, 29-30.) In a complaint filed

28

- 3 -

on June 21, 2005, the Begays allege that Defendants (including Dr. Killam) are liable to Micah for loss of consortium with her mother. (Dkt. 121 at ¶4.)[3]

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

The movant on a summary judgment motion bears the initial burden of providing a legal basis for its motion and identifying portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its burden, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Jt.Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). All inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party, Eastman Kodak Co. v. Image Tech'l Servs., Inc., 504 U.S. 451, 456 (1992).

---

[3] On June 6, 2006, this Court dismissed with prejudice the Begays' individual claim to recover compensation for the past and future expense of caring for Micah. See Dkt. 123.

## DISCUSSION

**A.     The Statute of Limitations is Tolled by Cindy's "Unsound Mind"**

The Court agrees with the parties that Arizona's statute of limitations and tolling statute applies in the present case (dkts. 93 at 4-5; 111 at 4; 118 at 3-4). See Two Rivers v. Lewis, 174 F.3d 987, 991-92 (9th Cir. 1999) (state law determines the statute of limitations applicable to personal injury claims in the forum state; "where the federal courts borrow the state statute of limitations, [they] also borrow the forum state's tolling rules") (citations omitted).

Arizona's statute of limitations for claims of medical malpractice is two years. See A.R.S. §12-542.  However, under Arizona's tolling statute, if a person entitled to bring an action "is at the time the cause of action accrues either under eighteen years of age or of unsound mind, the period of such disability shall not be deemed a portion of the period limited for commencement of the action.  Such person shall have the same time after removal of the disability which is allowed to others."   See A.R.S. § 12-502.

Dr. Killam contends Arizona's two-year statute of limitations for a medical malpractice claim expired before Cindy filed her medical malpractice claim against him on January 18, 2005.[4]  Any tolling of the statute of limitations for "unsound mind," he posits, ceased on March 1, 2002, the date Tah was appointed as Cindy's guardian, or May 6, 2002, the date Tah authorized the Attorneys to file a claim for medical malpractice on Cindy's behalf. (Dkt. 93 at 1-8; Dkt. 114 at 1-8.)  The Court disagrees.

Arizona law clearly provides that, in order to protect the right of a mentally incompetent person to bring a personal injury action, A.R.S. § 12-502 tolls the statute of limitations regardless of whether a guardian has been appointed on that person's behalf. Sahf v. Lake Havasu City Ass'n for the Retarded and Handicapped, 721 P.2d 1177, 1181-82

---

[4] As stated above, it is undisputed that the alleged medical malpractice occurred between March 15, 2001 and March 17, 2001.  (Dkts. 94 at ¶¶1-4; 118 at 2.)

- 5 -

1  (Ariz. App. 1986); see also Kiley v. Jennings, Strouss & Salmon, 927 P.2d 796, 800 (Ariz.
2  App. 1996) (affirming trial court's determination that tolling statute applied to action for
3  legal malpractice despite the appointment of a conservator).  In Sahf, the Arizona Court of
4  Appeal determined that, "[o]n its face, A.R.S. §12-502 provides no exception for the
5  appointment of a guardian for persons of 'unsound mind.'"  Sahf, 721 P.2d at 1183.  In the
6  absence of clear legislative intent to the contrary, the Sahf Court continued, "such an
7  exception [should not be grafted] on the statute." Id.  In addition to the tolling statute's clear
8  and unambiguous language, the Sahf Court determined that not permitting tolling to cease
9  upon the appointment of a guardian for persons of "unsound mind" is consistent with
10 principles set forth by the Arizona Supreme Court in Kenyon v. Hammer, 688 P.2d 961
11 (Ariz. 1984), and Barrio v. San Manuel Div'n Hosp. for Magma Copper Co., 692 P.2d 280
12 (Ariz. 1984), "and in accord with the majority of other jurisdictions."  Sahf, 721 P.2d at
13 1183.

14     The Arizona Supreme Court has not addressed whether the appointment of a guardian
15 removes a mentally incompetent person's legal disability for purposes of the statute of
16 limitations.  However, this Court finds that the Arizona Supreme Court would follow the
17 legislative interpretation set forth in Sahf and similarly hold that the appointment of a
18 guardian for a person of "unsound mind" does not terminate tolling and start the statute of
19 limitations.  See State ex rel. Corbin v. Pickrell, 667 P.2d 1304, 1307 (Ariz. 1983) ("where
20 the statutory language is unambiguous, that language must ordinarily be regarded as
21 conclusive, absent a clearly expressed legislative intent to the contrary."); accord Smith v.
22 Pima County Law Enforcement Council, 548 P.2d 1151, 1154 (Ariz. 1976) ("[S]tatutory
23 language which is clear and unambiguous requires no judicial interpretation.").

24     For two reasons, the Court rejects Dr. Killam's argument that failing to terminate
25 tolling upon the appointment of a guardian for a person of "unsound mind" "expands the
26 tolling statute beyond its purpose, and ignores the public policy underlying" Arizona's
27 medical malpractice statute of limitations.  (Dkt. 114 at 4.)  First, under the terms of the
28

- 6 -

1  tolling statute, a person of "unsound mind" is under a "disability."  The appointment of a
2  guardian neither alters nor removes the disabled person's mental unsoundness.  Therefore,
3  under the clear terms of the tolling statute, the appointment of a guardian does not terminate
4  the legal disability.  See A.R.S. § 12-502 ("the period of such disability shall not be deemed
5  a portion of the period limited for commencement of the action").  Second, to condition
6  tolling upon the appointment of a guardian would "constitute unjustifiable tampering with
7  the significant public policy clearly reflected in [the tolling statute,] the protection and
8  preservation of substantive rights of mentally incompetent persons," which outweighs the
9  policy in favor of prompt disposition of disputes.  Sahf, 721 P.2d at 1182 (citation omitted).

10  Like Dr. Killam, the Court is aware of the possibility that, in a case such as this one
11  where Cindy's legal disability may never be removed, the limitations period may remain
12  open for her entire lifetime.  See Dkt. 114 at 3, 5.  However, this possibility does not dictate
13  a different result: The tolling statute reflects a considered legislative judgment that in certain
14  circumstances the strong policy in favor of prompt disposition of disputes must give way to
15  the need to protect disabled plaintiffs who are unable to protect themselves.  The need for
16  protection continues so long as potential plaintiffs remain of "unsound mind."  See A.R.S.
17  § 12-502.

18  Dr. Killam contends Doe v. Roe, 955 P.2d 951 (Ariz. 1998), a more recent decision
19  of the Arizona Supreme Court applies here, rather than Sahf, a decision issued by the Arizona
20  Court of Appeal. (Dkt. 114 at 6-8.)  Dr. Killam contends Sahf does not establish a bright line
21  test for determining whether tolling ends upon the appointment of a guardian because Doe
22  provides that "the actual focus should be on whether the plaintiff has the ability to pursue his
23  or her legal remedies."  (Id. at 6.)  For several reasons, the Court disagrees.

24  First, Doe does not provide that a guardian appointed for a person of "unsound mind"
25  terminates tolling if the guardian has the ability to pursue the disabled person's legal
26  remedies.  Rather, Doe holds only that "unsound mind" occurs when a "person is unable to
27  manage his affairs or to understand his legal rights or liabilities."  Doe, 955 P.2d at 964,
28

- 7 -

1 citing Allen v. Powell's Int'l, Inc., 518 P.2d 588, 589 (Ariz. App. 1974). In the present case, for purposes of this motion *only*, Dr. Killam does not dispute that Cindy is of "unsound mind." Thus, Doe is clearly not applicable here.[5]

Second, as noted in Sahf, the principles announced by the Arizona Supreme Court in Kenyon and Barrio are consistent with the holding that A.R.S. § 12-502 tolls the statute of limitations regardless of whether a guardian has been appointed for a person of "unsound mind." Sahf, 721 P.2d at 1182-83. Arizona law recognizes that an action for personal injury is a fundamental right guaranteed by the Arizona Constitution. Kenyon, 688 P.2d at 975. Further, Barrio makes clear that the controlling consideration in terms of protecting that fundamental right is the inability of the "disabled" person (i.e., either a person of "unsound mind" or a minor under the age of eighteen) to bring an action on his own behalf, not the *possibility* that a guardian or parent will assert his rights.  See Barrio, 692 P.2d at 286 (holding, personal injury action of injured minor is tolled by A.R.S. § 12-502 regardless of whether the minor has a parent or guardian who could have brought suit on his behalf because there is no guarantee that minor's claim would be asserted by parent or guardian).

Third, any attempt to read Dr. Killam's construction – i.e., tolling terminates upon the appointment of a guardian who is capable of understanding the disabled person's legal rights – into Arizona's tolling provision would violate both Barrio and the Arizona Constitution's nonabrogation clause.  See Barrio, 692 P.2d at 285-86 (holding unconstitutional, under the nonabrogation clause, a statute which required that any action arising out of medical malpractice committed upon a minor under the age of seven years be brought no later than

---

[5] Likewise, Dr. Killam's reliance on Florez v. Sargeant, 917 P.2d 250, 255 (Ariz. 1996), and Allen (dkt. 114 at 7-8) are inapposite because both cases discuss the ability of the *disabled person* – as opposed to the *guardian* – to manage his affairs or understand his legal rights. See Florez, 917 P.2d at 255; Allen, 518 P.2d at 589.  Neither case provides support for the proposition urged by Dr. Killam – that tolling terminates upon the appointment of a guardian who is capable of understanding the disabled person's legal rights.

1  the minor's tenth birthday); A.R.S. Const. Art. 18 §6 ("[t]he right of action to recover
2  damages for injuries shall never be abrogated . . . .").

3  For each of these reasons, the Court rejects Dr. Killam's argument that "tolling can
4  end when the plaintiff is under the care of a Guardian who is willing and able to file a
5  lawsuit." Dkt. 114 at 7-8.

6  **B.     Micah's Consortium Claim is Not Barred by the Statute of Limitations**

7  In support of his Motion for Summary Judgment against Micah, Dr. Killam asserts
8  only that the dismissal of Cindy's medical malpractice claim "requires dismissal of Micah
9  Begay's claims as well" because claims for loss of consortium "are wholly derivative of the
10 principal claim, and therefore cannot exist without the principal claim." (Dkt. 93 at 7.) The
11 Court has determined that Cindy's claim for medical malpractice is not barred by Arizona's
12 statute of limitations. See supra at 5-9. Thus, this Court need not determine whether a loss
13 of consortium claim is derivative of the principal claim. Moreover, Micah's claim for loss
14 of consortium is not barred by Arizona's statute of limitations because she is only five years
15 old and the two year period following her eighteenth birthday will not expire until March 16,
16 2021 (dkt. 121 at ¶9). See A.R.S. § 12-502.

17 **C.     No Attorneys Fees or Costs are Awarded to the Begays**

18 The Begays argue that, because "there was no legal basis for claiming that the statute
19 of limitations had run as to" Micah's claims, the Court should award the Begays their
20 attorneys' fees and costs of responding to Dr. Killam's motion. (Dkt. 118 at 9.) The Court
21 will not award the Begays attorneys' fees or costs. In addition to failing to cite the
22 appropriate rule or statute pursuant to which they may be awarded attorneys' fees or costs,
23 the Begays have failed to cite any law in support of their argument that procedural defenses
24 against the parent are not valid against the child. See id. at 7-8. Thus, they have failed to
25 demonstrate that the basis of Dr. Killam's argument against Micah – because Cindy's
26 medical malpractice claim is barred by the statute of limitations, Micah's derivative claim
27 for loss of consortium is barred as well – is "groundless and frivolous." See dkt. 118 at 9.
28

Accordingly,

**IT IS HEREBY ORDERED DENYING** Defendant Dr. Killam's Motion for Summary Judgment. (Dkt. 93.)

**IT IS FURTHER ORDERED DENYING** the Begays' request to be awarded attorneys' fees and costs.

DATED this 8th day of December, 2006.

Stephen M. McNamee
United States District Judge

- 10 -